[No. B189444. Second Dist., Div. Three. Oct. 17, 2007.]

MARIA MEJIA, Plaintiff and Respondent, v.
CITY OF LOS ANGELES, Defendant;
CALIFORNIA HOME DEVELOPMENT, LLC, Real Party in Interest and
Appellant.

COUNSEL

Law Offices of L. Douglas Brown and L. Douglas Brown for Real Party in Interest and Appellant.

John B. Murdoch for Plaintiff and Respondent.

OPINION

CROSKEY, J.—California Home Development, LLC (California Home), appeals a postjudgment order awarding attorney fees to Maria Mejia as the successful party in a proceeding under the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.). The order awards Mejia $25,000 in fees payable by the City of Los Angeles and an equal amount payable by California Home. California Home contends (1) Mejia is not entitled to a fee award because her personal interest was her primary motivation for prosecuting this proceeding; (2) the city was solely at fault and should bear the entire fee award; and (3) an award of attorney fees against a party that is without fault impermissibly infringes that party's First Amendment right to petition. We conclude that California Home has shown no error and affirm the order.

## *FACTUAL AND PROCEDURAL BACKGROUND*

California Home proposed a development of single-family homes on 17 acres of land along Wheatland Avenue in the Sunland area of the City of Los Angeles, in a community known as Shadow Hills. Mejia owned and resided on property adjacent to the proposed development. She and several other residents opposed the proposal. The city council approved the project in February 2003 and adopted a mitigated negative declaration.

Mejia filed a petition for writ of mandate in the superior court challenging the project approval under CEQA and on other grounds. California Home opposed the petition as the real party in interest. The superior court denied the petition in February 2004. On appeal, we concluded that substantial evidence supported a fair argument that the project would have significant unmitigated environmental impacts on wildlife and traffic and that a mitigated negative declaration was improper. (*Mejia v. City of Los Angeles* (2005) 130 Cal.App.4th 322, 340, 342 [29 Cal.Rptr.3d 788].)[1] We therefore reversed the judgment with directions to the superior court to grant the petition and issue a peremptory writ of mandate ordering the city to vacate its approval of the project and cause an EIR (environmental impact report) to be prepared prior to any project approval. (*Id.* at p. 343.)

The superior court entered a judgment pursuant to our directions in September 2005. Mejia moved for an award of attorney fees under Code of Civil Procedure section 1021.5. She declared that she had paid a total of $57,931 in attorney fees in this proceeding and had spent over 150 hours of her own time preparing briefs and preparing for and arguing her appeal in propria persona, in addition to $36,481 in attorney fees that she had incurred in prior successful litigation against the city involving the same project (see *Mejia v. City of Los Angeles, supra*, 130 Cal.App.4th at pp. 327–328) for which she did not seek a fee recovery.[2] California Home and the city each opposed the motion. The court found that $6,600 of the fees requested actually were expended in the prior proceeding and that $50,000 was the reasonable amount of fees incurred in this proceeding. The court awarded Mejia a total of $50,000 in attorney fees, including $25,000 payable by California Home and $25,000 payable by the city. California Home appealed the order; the city did not appeal.

---

[1] A more thorough description of the factual and procedural background is included in our prior opinion and need not be repeated here.

[2] Mejia also declared that her attorneys had billed her an additional amount of approximately $15,000 that she disputed and had not paid.

## CONTENTIONS

California Home contends (1) Mejia is not entitled to a fee award because her personal interest was her primary motivation for prosecuting this proceeding; (2) the city was solely at fault and should bear the entire fee award; and (3) an award of attorney fees against a party that is without fault impermissibly infringes that party's First Amendment right to petition.

## DISCUSSION

### 1. *Mejia Is Entitled to an Award of Attorney Fees*

■ Code of Civil Procedure section 1021.5 authorizes an award of attorney fees "to a successful party against one or more opposing parties" in an action that "has resulted in the enforcement of an important right affecting the public interest" if the action has conferred a significant benefit on the general public or a large class of persons and "the necessity and financial burden of private enforcement" make the award appropriate.[3] California Home does not challenge the superior court's implied findings that Mejia is a successful party and that this proceeding has vindicated an important public right and conferred a significant benefit on the general public or a large class of persons, but contends Mejia failed to establish the necessity and financial burden of private enforcement. With respect to necessity and financial burden, " '[a]n award on the "private attorney general" theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff "out of proportion to his individual stake in the matter." [Citation.]' " (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 941 [154 Cal.Rptr. 503, 593 P.2d 200].)[4]

" '[T]he private attorney general doctrine "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a

---

[3] Code of Civil Procedure section 1021.5 states, in relevant part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

[4] Code of Civil Procedure section 1021.5 codified the private attorney general theory. (*Woodland Hills Residents Assn., Inc. v. City Council, supra,* 23 Cal.3d at p. 934.)

practical matter frequently be infeasible." Thus, the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.' [Citation.]" (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 [21 Cal.Rptr.3d 331, 101 P.3d 140].) "[I]t is established that fees, if recoverable at all—pursuant either to statute or [the] parties' agreement—are available for services at trial and on appeal." (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 637 [186 Cal.Rptr. 754, 652 P.2d 985].)

Whether the moving party has satisfied the statutory requirements so as to justify a fee award is a question committed to the discretion of the trial court; we review the ruling for abuse of discretion. (*Baggett v. Gates* (1982) 32 Cal.3d 128, 142–143 [185 Cal.Rptr. 232, 649 P.2d 874]; *Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors* (2000) 79 Cal.App.4th 505, 511 [94 Cal.Rptr.2d 205].) An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479 [243 Cal.Rptr. 902, 749 P.2d 339]; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193]; *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704].) This standard of review affords considerable deference to the trial court provided that the court acted in accordance with the governing rules of law. We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise. (*Denham, supra,* at p. 564; *State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610 [109 Cal.Rptr.2d 256].)

California Home cites several opinions in which the Court of Appeal affirmed the denial of a fee award under Code of Civil Procedure section 1021.5 based on the superior court's finding that the financial burden of private enforcement did not outweigh the petitioner's personal interest at stake. (*Williams v. San Francisco Bd. of Permit Appeals* (1999) 74 Cal.App.4th 961, 966–967 [88 Cal.Rptr.2d 565]; *City of Hawaiian Gardens v. City of Long Beach* (1998) 61 Cal.App.4th 1100, 1113 [72 Cal.Rptr.2d 134]; *Christward Ministry v. County of San Diego* (1993) 13 Cal.App.4th 31, 50 [16 Cal.Rptr.2d 435]; *Schwartz v. City of Rosemead* (1984) 155 Cal.App.3d 547, 560 [202 Cal.Rptr. 400].) Those opinions affirming a discretionary ruling do not compel the conclusion that the ruling here was an abuse of discretion. Rather, California Home must show that the finding that Mejia's personal interest does not outweigh the financial burden of private enforcement exceeds the bounds of reason.

Mejia's personal interest as a homeowner and resident in opposing the proposed development based on an inadequate environmental review was substantial. But her substantial personal interest does not preclude a finding that the financial burden of this litigation was out of proportion to her personal stake in this matter. The financial burden of this litigation on Mejia was great; she declared that the demands of this litigation caused her to deplete her retirement savings and that she was forced to refinance her home to support this litigation. We cannot conclude based on the present record that the court's finding that Mejia's personal interest did not outweigh the financial burden of private enforcement was manifestly unreasonable.[5]

### 2. The Fee Award Against California Home as the Real Party in Interest Was Proper

California Home contends the fee award against it was improper because California Home was without fault and CEQA compliance was the city's sole responsibility. Code of Civil Procedure section 1021.5 authorizes an attorney fee award "to a successful party against one or more opposing parties . . . ." (*Ibid.*) Thus, the question is whether California Home was an opposing party within the meaning of the statute. The material facts concerning California Home's participation in the litigation are undisputed. Whether section 1021.5 authorizes a fee award against California Home as an "opposing part[y]" (*ibid.*) in these circumstances therefore is strictly a question of statutory construction. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175–1176 [39 Cal.Rptr.3d 788, 129 P.3d 1] (*Connerly*).) Our review is de novo. (*Ibid.*)

Our task in construing a statute is to ascertain the legislative intent so as to effectuate the purpose of the law. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].) The statutory language ordinarily is the most reliable indicator of legislative intent. (*Ibid.*) We give the words of the statute their ordinary and usual meaning and construe them in the context of the statute as a whole and the entire scheme of law of which it is a part. (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71]; *Hassan, supra*, at p. 715.) If the language is clear and a literal construction would not result in absurd consequences that the Legislature did not intend, the plain meaning governs. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676,

---

[5] California Home argues for the first time in its reply brief that Mejia was required to present more specific evidence of the value of her personal interest but failed to do so. We conclude that California Home waived this claim of error by failing to assert the argument in its opening brief. (*Landis v. Pinkertons, Inc.* (2004) 122 Cal.App.4th 985, 993 [18 Cal.Rptr.3d 890].)

101 P.3d 563].) If the language is ambiguous, we may consider a variety of extrinsic aids, including the purpose of the statute, legislative history, and public policy. (*Ibid.*)

The term "opposing parties" is not defined in the statute. The usual meaning of the term "party" in the context of a judicial proceeding, and as used in Code of Civil Procedure section 1021.5, is a person " ' "by or against whom a suit is brought." ' " (*Connerly*, *supra*, 37 Cal.4th at p. 1176.) Although a "party" in an action ordinarily is a plaintiff or defendant (see *ibid.*), a real party in interest in a mandamus proceeding also is regarded as a party to the litigation. California Home as the real party in interest in this mandamus proceeding therefore was and continues to be a party to this litigation.

*Connerly*, *supra*, 37 Cal.4th 1169, held that an amicus curiae was not an "opposing party" within the meaning of Code of Civil Procedure section 1021.5 and therefore could not be liable for attorney fees under the statute. *Connerly* discussed opinions by the Courts of Appeal holding that real parties in interest in mandamus proceedings can be liable for fees under the statute. (*Connerly*, at pp. 1180–1181, discussing *Bolsa Chica Land Trust v. Superior Court* (1999) 71 Cal.App.4th 493, 517–518 [83 Cal.Rptr.2d 850] and *San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino* (1984) 155 Cal.App.3d 738, 756 [202 Cal.Rptr. 423] (*Audubon Society*).) *Connerly* distinguished those cases, stating:

"Thus, in all of the above cases, those found liable for section 1021.5 fees were either real parties in interest that had a direct interest in the litigation, the furtherance of which was generally at least partly responsible for the policy or practice that gave rise to the litigation, or were codefendants with a direct interest intertwined with that of the principal defendant. In no case did the opposing party have only an ideological or policy interest typical of an amicus curiae, as the California Business Council does in the present case. Although some of the courts, above, stressed active participation in the litigation as grounds for awarding attorney fees, no court has held that active participation alone, without a direct interest in litigation, can be grounds for awarding section 1021.5 fees.

"Connerly nonetheless argues, in effect, that a litigant's active participation in the litigation by itself can convert an amicus curiae into a real party in interest liable for attorney fees under section 1021.5. As discussed [above], the California Business Council acted in many respects as lead counsel on the

litigation, answering the petition for writ of mandate, seeking discovery and litigating a discovery motion, seeking to remove the case to federal court, winning recusal of a judge, and providing the most substantive briefing on the issue. It played this active role, however, at plaintiff's invitation and with the encouragement of the trial court, in order to conduct litigation that would otherwise not have been adversarial. There is no indication the Legislature contemplated that someone in that circumstance, who was neither a defendant nor an authentic real party in interest, could be considered an opposing party within the meaning of section 1021.5." (*Connerly, supra,* 37 Cal.4th at pp. 1181–1182, fn. omitted.)

■ Thus, the rationale for the holding in *Connerly, supra,* 37 Cal.4th 1169, supports our conclusion that a real party in interest in a mandamus proceeding that has a direct interest in the litigation, more than merely an ideological or policy interest, and actively participates in the litigation is an opposing party within the meaning of Code of Civil Procedure section 1021.5 and can be liable for attorney fees under the statute.

Moreover, an award of attorney fees "to a successful party against one or more opposing parties" (Code Civ. Proc., § 1021.5) does not require a finding of fault or misconduct by the opposing party. The statutory language does not contain such a requirement, and courts have recognized that there is no such requirement. (*Washburn v. City of Berkeley* (1987) 195 Cal.App.3d 578, 588 [240 Cal.Rptr. 784] ["no finding of fault is required under that statute"]; *Audubon Society, supra,* 155 Cal.App.3d at p. 756; *Schmid v. Lovette* (1984) 154 Cal.App.3d 466, 475 [201 Cal.Rptr. 424].)

*Audubon Society, supra,* 155 Cal.App.3d at page 756, stated: "[F]ees granted under the private attorney general theory are not intended to punish those who violate the law but rather to ensure that those who have acted to protect public interest will not be forced to shoulder the cost of litigation. In this case, Gold Mountain was a major party, actively litigating from the inception of the action in order to protect its interests. As the real party in interest, it had the most to gain. When a private party is a real party in interest and actively participates in litigation along with the governmental agency, it is fair for that party to bear half the fees. [Citation.]" Similarly, *Schmid v. Lovette, supra,* 154 Cal.App.3d at pages 473–475, rejected the appellants' argument that they believed in good faith that they were following the law, and held that there was "no 'good faith exception' " to liability for attorney fees under Code of Civil Procedure section 1021.5.

Accordingly, we conclude that California Home was an opposing party under Code of Civil Procedure section 1021.5 and that its purported absence of fault or misconduct cannot relieve it of liability for fees under the statute.

### 3. *A Fee Award Under the Statute Does Not Impermissibly Infringe the Right to Petition*

■ The First Amendment to the United States Constitution protects the right "to petition the Government for a redress of grievances." This includes the right of access to the courts. (*California Transport v. Trucking Unlimited* (1972) 404 U.S. 508, 513 [30 L.Ed.2d 642, 92 S.Ct. 609].) Restrictions on the right to petition generally are subject to the same analysis as restrictions on the right of free speech. (*Wayte v. United States* (1985) 470 U.S. 598, 610, fn. 11 [84 L.Ed.2d 547, 105 S.Ct. 1524].) Laws that regulate speech based on the content of the expression ordinarily are evaluated under the strict scrutiny standard. (*United States v. Playboy Entertainment Group, Inc.* (2000) 529 U.S. 803, 813 [146 L.Ed.2d 865, 120 S.Ct. 1878].) A regulation of speech is considered content based if the purpose of the law is to restrict speech because of the government's disagreement with the message it conveys. (*Ward v. Rock Against Racism* (1989) 491 U.S. 781, 791 [105 L.Ed.2d 661, 109 S.Ct. 2746].) Under strict scrutiny, a content-based regulation is permissible only if it is narrowly tailored and the least restrictive means to serve a compelling government interest. (*Playboy Entertainment, supra,* at p. 813.)

■ Laws that cause some incidental restriction on conduct protected by the First Amendment but do not regulate the content of the expression generally are evaluated under the less stringent standard announced in *United States v. O'Brien* (1968) 391 U.S. 367 [20 L.Ed.2d 672, 88 S.Ct. 1673] (*O'Brien*). Under *O'Brien,* an important government interest in regulating the nonspeech element can justify incidental restrictions on the right of free speech:

"[A] government regulation is sufficiently justified [(1)] if it is within the constitutional power of the Government; [(2)] if it furthers an important or substantial governmental interest; [(3)] if the governmental interest is unrelated to the suppression of free expression; and [(4)] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." (*O'Brien, supra,* 391 U.S. at p. 377; cf. *Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 196

[118 Cal.Rptr.2d 330] ["[T]he right to petition may be subject to legislatively imposed conditions and restrictions, provided the restrictions are narrowly drawn to achieve a substantial governmental interest that is content neutral and unrelated to the suppression of the exercise of First Amendment rights."].)

California Home does not challenge either the Legislature's constitutional authority to legislate on the subject of attorney fees or the importance of the government interest to encourage suits that enforce important public policies. The third requirement of *O'Brien, supra,* 391 U.S. 367, is satisfied if the government interest is to restrict conduct that is not protected by the First Amendment, rather than to restrict protected conduct. (*Texas v. Johnson* (1989) 491 U.S. 397, 406–407 [105 L.Ed.2d 342, 109 S.Ct. 2533].) Where free speech is at issue, the government interest must be "unrelated to the suppression of free expression." (*O'Brien, supra,* at p. 377.) Where the right to petition is at issue, therefore, the government interest must be unrelated to the suppression of constitutionally protected petitioning activity.

The purpose and primary effect of Code of Civil Procedure section 1021.5 is to encourage litigation that enforces important public policies, as discussed, *ante.* The purpose of an award of fees against an unsuccessful opposing party is not to penalize petitioning activity by that party, but to encourage litigation by the successful party by making the litigation financially feasible. We conclude that the government interest served by section 1021.5 is unrelated to the suppression of valid petitioning activity.

The fourth requirement of *O'Brien, supra,* 391 U.S. 367 is satisfied if the incidental restriction on the right to petition "is no greater than is essential to the furtherance of" the government interest served by the statute. (*Id.* at p. 377.) The statute need not apply the "least restrictive means" to achieve its goals, as required under strict scrutiny. Rather, the incidental restriction must be "narrowly tailored" and cannot be "substantially broader than necessary to achieve the government's interest." (*Ward v. Rock Against Racism, supra,* 491 U.S. at pp. 798, 800.) We regard any incidental restriction on an opposing party's right to petition as a result of the financial burden of an attorney fee award under Code of Civil Procedure section 1021.5 as justifiable and narrowly tailored to achieve the purpose of encouraging the enforcement of important public rights by making the litigation financially feasible to the successful party. California Home has not shown that the statute is substantially broader than is necessary to achieve the important government interest that it serves.

## *DISPOSITION*

The order is affirmed. Mejia is entitled to recover her attorney fees incurred in this appeal in an amount to be determined by the superior court, and also is entitled to recover her costs on appeal.

Klein, P. J., and Aldrich, J., concurred.